UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JULIAN GREEN,                       )
                                    )   CIVIL ACTION NO.
            Petitioner,             )   18-12298-DPW
                                    )
v.                                  )
                                    )
STEVEN KENNEWAY,[1]                 )
Superintendent,                     )
                                    )
            Respondent              )
                                    )

MEMORANDUM AND ORDER
July 15, 2019

This case arises out of the 2010 jury trial and conviction of the Petitioner, Julian Green, in Massachusetts State Superior Court for second-degree murder.  Mr. Green was sentenced to life in prison and he appealed.

Mr. Green's co-defendant, Anthony Russ, was thereafter acquitted of murder charges involving the same victim in a separate trial.  Mr. Green then filed a motion in the Superior Court for a new trial while his direct appeal was pending, arguing that evidence presented during Mr. Russ's trial constituted newly discovered evidence of a third-party

_____

[1] Defendant Steven Kenneway is the Superintendent of MCI Shirley, where Mr. Green was housed at the time he filed his petition for relief under 28 U.S.C. § 2254.  Mr. Green apparently has since been moved to MCI Norfolk.  However, neither party has moved to substitute the MCI Norfolk Superintendent as the Respondent in this case.  Rather than further complicating docketing, I will leave the caption unchanged with the recognition that the proper respondent is Mr. Green's current custodian in the Massachusetts Correctional System.

perpetrator.  The Superior Court denied the motion and Mr. Green

timely appealed that decision.  The Massachusetts Appeals Court,

after consolidating the two appeals, affirmed in an unpublished

decision[2] and the Supreme Judicial Court declined further

appellate review.

Mr. Green now seeks a federal writ of habeas corpus under

28 U.S.C. § 2254 on the basis that the Superior Court's denial

of his motion for a new trial deprived him of due process and

the right to present a defense.  Mr. Green also argues that his

trial counsel was constitutionally ineffective because he failed

both to raise certain evidentiary objections and to offer

evidence of a third-party perpetrator.

---

[2] The Massachusetts Appeals Court issued its decision in this
case under MASS. APP. CT. R. 1:28, which allows for the summary
disposition of an appeal if a panel of justices of the Appeals
Court "determine[s] that no substantial question of law is
presented by the appeal or that some clear error of law has been
committed which has injuriously affected the substantial rights
of an appellant."  MASS. APP. CT. R. 1:28.  Pursuant to this rule,
both the North East Reporter Third and the Massachusetts Appeals
Court Reports included only the final disposition of this case
in table format in their print volumes, in recognition of the
fact that summary decisions under Rule 1:28 "are primarily
directed to the parties" and "are not circulated to the entire
court" prior to issuance. *See Commonwealth* v. *Green*, 87 N.E.3d
1200; 92 Mass. App. Ct. 1102 (Mass. App. Ct. Aug. 4, 2017); *see
also Chace* v. *Curran*, 881 N.E.2d 792, 794 n. 4 (Mass. App. Ct.
2008).  Nevertheless, the full memorandum explaining the
reasoning of the Appeals Court is available on both WestLaw and
Lexis. *See* 2017 WL 3317888; 2017 Mass. App. Unpub. LEXIS 773.
It also was included as part of the Petitioner's Application for
Further Appellate Review ("ALOFAR") to the SJC and filed with
this court in conjunction with the instant petition for habeas
relief.  When citing to the decision of Appeals Court in this
Memorandum, I have included both the citation to the
Massachusetts Appeals Court Reporter and to WestLaw.

# I. BACKGROUND

## (A) Factual Background[3]

### 1. The Incident and Investigation

On July 18, 2007, shots were fired from at least two different guns into a residence located at 36 General Patton Drive in Hyannis. During the shooting, a .40 caliber bullet struck and fatally wounded Jacques Sellers, who was present in the house.

Carrie Perry, a woman who was in the house at the time of the incident gave testimony at trial that she saw "two young black Americans in jean shorts with hoodies on" running in the middle of the road immediately after the shooting; she did not, however, see either man's face. Another woman, Courtney Doyle, testified that she was sitting in her parked car across the street at the time of the incident and that she saw two African

---

[3] Under 28 U.S.C. § 2254(d)(2), I am obligated to defer to the factual findings of the State courts unless they are unreasonable in light of the evidence presented. The facts as presented here are drawn from the trial transcript as referenced in the decision of the Barnstable County Superior Court denying Mr. Green's motion for a new trial, and from the memorandum filed by the Massachusetts Appeals Court explaining its affirmance of the judgment. *Commonwealth* v. *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 (Mass. App. Ct. Aug. 4, 2017) (unpublished Memorandum and Order), *review denied* 478 Mass. 1104 (2017), which was the last fully reasoned judgment of the state courts. *See Wilson* v. *Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that, when the relevant state-court decision on the merits does not include reasons for its disposition, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.").

American men, one under six feet tall, and one about five feet,
ten inches tall, wearing a tan sweatshirt and a black sweatshirt
respectively.

During the investigation, police officers recovered shell
casings from several .38 caliber and .40 caliber bullets and
found several bullet holes in the front and side windows and in
the house's siding.  The police also used a canine unit to track
suspects to 23 General Patton Drive, the residence of Todd
Lampley.  Mr. Lampley previously had been beaten by Rodney
Ferguson, who was present at 36 General Patton Drive when the
shooting took place.

While police were searching the area, they also recovered a
glove and a black hooded sweatshirt, both of which were later
tested for DNA.  The tests did not contain enough information to
identify any particular person as the source of the DNA taken
from the glove and excluded Mr. Green as the source of the DNA
taken from the sweatshirt.

2.    The Petitioner's Involvement

As the investigation into the incident continued, Mr.
Green, along with Anthony Russ, Todd Lampley, and Devarus
Hampton, were identified by law enforcement officers as persons
of interest.  The investigators eventually focused on Mr. Green
and Mr. Russ as the possible shooters.  Mr. Green's girlfriend
at the time, Jessica Schwenk, testified that on the day of the
shooting, Mr. Green accompanied her to her grandmother's house

4

in West Dennis.  At some point during the evening, Mr. Green got

a phone call and told Ms. Schwenk that his friend, Mr. Russ,

needed him in Hyannis.  After receiving the call, Mr. Green

called Jill Parsons and asked her to bring him "something he had

left in her garage."  The "thing" was a gun, which Ms. Parsons

brought to a CVS in Yarmouth and gave to Mr. Green.  Ms. Parsons

testified that Mr. Green later told her he threw the gun in the

ocean.

After Mr. Green received the gun from Ms. Parsons, Ms.

Schwenk drove Mr. Green to a hotel in Yarmouth and, following

his instructions, then drove alone to General Patton Drive in

Hyannis.  She testified that she saw Mr. Green and Mr. Russ

together on General Patton Drive, and that they instructed her

to wait in the car on the next street over.  A short while

later, Mr. Green and Mr. Russ came back to her car and she drove

them to the end of the road, where they ran into the woods.

When he saw her later that night and the following day, Mr.

Green told Ms. Schwenk that "he shot the house" because "he was

helping a friend."

Mr. Green was eventually arrested and indicted by a grand

jury.[4]  During his incarceration, Mr. Green wrote letters to Ms.

---

[4] Mr. Green confessed to shooting into 36 General Patton Drive
both during his October 31, 2007 police interview and during his
testimony before the grand jury on November 9, 2007.  The
Superior Court suppressed evidence of both confessions, finding
that they were obtained in violation of the Fifth Amendment and
the protections afforded by *Miranda* v. *Arizona*, 384 U.S. 436

Schwenk, who was staying with her mother, Sandra Schwenk. After Ms. Schwenk was arrested on different charges, her mother and her mother's friend, Lisa Steele, read certain of the letters sent by Mr. Green to Ms. Schwenk. Lisa Steele then contacted a law enforcement friend, Lt. Det. Robert Melia of the Massachusetts State Police, and told him that she believed the letters contained incriminating information about the July 18, 2007 shooting.

Ms. Steele eventually gave Det. Melia some of the letters, and Det. Melia advised her not to tamper with any of the remaining letters since they might contain material evidence in the Commonwealth's case against Mr. Green. Shortly thereafter, Sandra Schwenk gave the remaining letters to Ms. Schwenk's attorney, who, in turn, gave them to the police. Law enforcement officials never obtained a warrant for these letters.[5]

_____

(1966), as incorporated into Massachusetts state law. *See, e.g.*, *Commonwealth* v. *Martin*, 827 N.E.2d 198, 204-05 (Mass. 2005) (holding that, "[i]nsofar as [*Miranda*] adequately protects those rights [guaranteed by the state constitution regarding the privilege against self-incrimination], a separate rule is not required. To the extent that its application proves inadequate to the task, [the SJC has] 'established certain State law principles as adjuncts to the Miranda rule.'" (citing, *inter alia*, *Commonwealth* v. *Ghee*, 607 N.E.2d 1005, 1009 n. 5 (Mass. 1993); *Commonwealth* v. *Snyder*, 597 N.E.2d 1363, 1368-69 (Mass. 1992)).

[5] In his original motion for a new trial, Mr. Green argued that the letters were seized in violation of his Fourth and Fifth Amendment rights because the police did not have a warrant to seize them and, in any event, they were the fruits of an improper police interrogation. He also argued that his

*(B)* *Procedural Background and the Present Petition*

    1.    State Court Proceedings

On January 8, 2008, a Barnstable County grand jury indicted

Mr. Green for murder in the second degree, assault and battery

with a dangerous weapon, discharge of a firearm within 500 feet

of a dwelling, unlawful possession of a firearm, and assault

with a dangerous weapon.  The prosecution proceeded on a joint

venture theory, reflecting the contention that Mr. Green could

be found guilty even if the bullet he fired was not the one that

ultimately struck and killed the victim.  *See Green*, 92 Mass.

App. Ct. 1102, 2017 WL 3317888 at *1 n. 3.[6]  Following an eight-

---

counsel's failure to object to the admission of the letters
rendered him constitutionally ineffective.  Both the Superior
Court and the Appeals Court rejected this argument, holding that
Mr. Green did not have standing to challenge the search and
seizure of the letters and that the search was not effectuated
by the *Commonwealth*, so it could not violate the Fourth
Amendment as government action.  Both courts also held that the
letters were not the fruits of an improper police interrogation
because Mr. Green failed to show a direct link between the
suppressed testimony and the letters themselves.  *Green*, 92
Mass. App. Ct. 1102, 2017 WL 3317888 at *4.
   Mr. Green references the letters in his ALOFAR in conjunction
with his ineffective assistance argument, and suggests that they
should have been suppressed.  However, he does not advance a
clear argument either for suppression or for ineffective
assistance in the ALOFAR.  Mr. Green similarly references the
letters in passing in his habeas petition in connection with his
argument that his trial counsel was constitutionally
ineffective.  However, he has not argued in his habeas petition
that the letters should have been suppressed; nor, I note, is he
entitled to raise that Fourth Amendment claim here.  *See
generally*, *Stone* v. *Powell*, 428 U.S. 465 (1976).
[6] Massachusetts law holds that "[a] joint venturer is 'one who
aids, commands, counsels, or encourages commission of a crime
while sharing with the principal the mental state required for
the crime.'"  *Commonwealth* v. *Chipman*, 635 N.E.2d 1204, 1209

day jury trial, Mr. Green was convicted on all five charges and sentenced to life in prison.

Mr. Green appealed his convictions on July 26, 2010 and, on February 17, 2012, he filed his motion with the Superior Court for a new trial under MASS. R. CRIM. P. 30(b) on the basis that, among other things, testimony presented by Devarus Hampton at the trial of Anthony Russ constituted newly discovered evidence and that trial counsel was constitutionally ineffective. The Superior Court denied the motion for a new trial on November 6, 2014. Mr. Green appealed that decision, which resulted in the consolidation of the direct appeal of his conviction and the appeal of the denial of a new trial.

On August 4, 2017, the Appeals Court affirmed the convictions and the denial of a new trial. It held that Mr. Hampton's testimony did not constitute newly discovered evidence that would entitle Mr. Green to a new trial and that trial counsel was not constitutionally ineffective. *Commonwealth* v.

_____

(Mass. 1994) (internal citations omitted). "To convict a defendant of murder on a joint venture theory, the Commonwealth must establish that the defendant 'was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement [was] willing and available to help the other if necessary.'" *Id*. (internal citations omitted) (modification in original). A jury is not required to decide whether the defendant was acting as the principal or merely as a helper when making a determination of guilt on a murder charge prosecuted as a joint venture. *Commonwealth* v. *Pike*, 726 N.E.2d 940, 944 (Mass. 2000).

*Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 (Mass. App. Ct. Aug. 4, 2017).

On September 1, 2017, Mr. Green filed an Application for Further Appellate Review ("ALOFAR") with the SJC. In particular, the ALOFAR argued that the testimony of Devarus Hampton should be considered newly-discovered, and that the Superior Court's denial of Mr. Green's motion for a new trial on the basis that newly-discovered evidence regarding a third-party perpetrator violated his federal and state constitutional right to present a defense. Mr. Green also argued that trial counsel was otherwise constitutionally ineffective because of various actions he failed to take during Mr. Green's original trial, specifically by not addressing whether Mr. Lampley lied about his alibi; failing to confront and object to the prosecutor's allegedly misleading statements during closing arguments, including those statements about phone calls made to Mr. Green's cell phone; and, failing to seek the suppression of letters sent by Mr. Green to Ms. Schwenk.

On November 6, 2017, the SJC denied further appellate review. *Commonwealth* v. *Green*, 478 Mass. 1104 (Mass. 2017).

    2.    This Federal Habeas Corpus Petition

Mr. Green timely filed the present petition for habeas corpus under 28 U.S.C. § 2254 on November 2, 2018.[7] The petition

_____

[7] As relevant here, under 28 U.S.C. § 2244(d)(1), a petitioner in state custody is bound by a one-year limitations period, which

raises two distinct bases for relief.  First, Mr. Green argues that the state courts violated his right to due process and to present a defense by arbitrarily denying his motion for a new trial and excluding evidence regarding a third-party perpetrator.  Second, he argues that trial counsel was constitutionally ineffective because he failed to challenge inculpatory evidence that had no basis in the record and failed to introduce exculpatory evidence about a third-party perpetrator.

I will address the merits of each of the two claims in turn.[8]

---

runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(a).

[8] As a preliminary matter, I note Mr. Green satisfies the basic procedural requirements of section 2254.

First, when he filed the present petition, he was "in custody pursuant to the judgment of a State court."  28 U.S.C. § 2254(b)(1).

He also appears, at least facially, to have "exhausted the remedies available in the courts of the State" because he has presented at least some version of the two claims presented here to the Massachusetts courts.  28 U.S.C. § 2254(b)(1)(A).  He pursued both a direct appeal and collateral relief through a motion for new trial in the state courts and sought discretionary review from the SJC.  The law does not require that he pursue any other avenues before turning to the federal courts for relief.  *See generally*, *Rose* v. *Lundy*, 455 U.S. 507 (1982) (holding that state prisoners must seek full relief from state courts first, before seeking federal habeas relief); *O'Sullivan* v. *Boerckel*, 526 U.S. 838 (1999) (holding that, to satisfy the complete exhaustion requirement, a state prisoner must present his claims to the state Supreme Court for discretionary review); *White* v. *Ragen*, 324 U.S. 760 (1945) (per curiam) (holding that the exhaustion requirement does not require state prisoners to seek certiorari from the federal Supreme Court before seeking habeas relief); *see also Gunter* v.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2254, if claims presented by Mr. Green were "adjudicated on the merits in State court proceedings" – as they were here – I may grant his petition for a writ of habeas corpus only if the judgment of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the decision was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). The standard is highly deferential to the judgment of the state court. As with the exhaustion requirement, this approach is based on the recognition that "the federal and state courts are equally bound to guard and protect rights secured by the Constitution." *Rose* v. *Lundy*, 455 U.S. 507, 518 (1982), and that the federal court should not proceed in that undertaking until after the state courts have been afforded the full opportunity to do so themselves.

---

*Maloney*, 291 F.3d 74, 82 (1st Cir. 2002) ("Federal habeas review does not demand that a petitioner in every case ask the state for collateral relief where he has already fairly presented the claim and the evidence on direct appeal. . . . However, where the claim has not been fairly presented on direct appeal, . . . it should be fairly presented to the state court through a motion for collateral relief.") (internal citations omitted)).

I note that the Commonwealth argues here that a portion of Mr. Green's ineffective assistance of counsel claim was not properly presented to the state courts and therefore, has not been exhausted. I address, and reject, that argument below.

A federal claim is "adjudicated on the merits in State court proceedings" and becomes entitled to deference "if there is a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim, rather than on a procedural, or other, ground." *Yeboah-Sefah* v. *Ficco*, 556 F.3d 53, 66 (1st Cir. 2009). This includes circumstances in which the state court's judgment is based on questions of state law, but where "the state and federal issues are for all practical purposes synonymous and the state standard is at least as protective of the defendant's rights" as the federal one. *Scott* v. *Gelb*, 810 F.3d 94, 99 (1st Cir. 2016). Moreover, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[9] *Johnson* v. *Williams*, 133 S. Ct. 1088, 1094 (2013) (citing *Harrington* v. *Richter*, 562 U.S. 86, 99 (2011)).

---

[9] In the circumstance where a federal claim is raised in, but not decided by, the state court and where the presumption that it was adjudicated has been rebutted, the parallel federal claim raised in a habeas petition is reviewed de novo. *Yeboah-Sefah* v. *Ficco*, 556 F.3d 53, 66 (1st Cir. 2009).

If the state decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment" – for example if "the prisoner had failed to meet a state procedural requirement" – the federal habeas court cannot review the federal claim. *Coleman* v. *Thompson*, 501 U.S. 722, 729-30 (1991); *see also Harris* v. *Reed*, 489 U.S. 255, 265 (1989). "If the state court's decision indeed rests on some other, nonprocedural ground, federal merits review will be available only if that ground is federal in nature, or

If a state court has, in fact, adjudicated the federal claims, its decision stands, and the petition for habeas corpus must be denied, unless the judgment was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the decision was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law if it "contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result." *Clements* v. *Clarke*, 592 F.3d 45, 56 (1st Cir. 2010) (internal quotations and citations omitted).  It is an unreasonable application of federal law if "the court either identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts" or if it "unreasonably refuses to extend a principle to a new context where it should apply." *Id*. (internal quotations and citations omitted).  In either circumstance, "[t]he state court's factual findings are presumed to be correct unless the petitioner rebuts this presumption of correctness with clear and convincing evidence."

'interwoven' with federal law." *Lee* v. *Corsini*, 777 F.3d 46 (1st Cir. 2015).

*Yeboah-Sefah*, 556 F.3d at 66.

A federal court's review, then, is confined to the state court's application of federal law. *Id*. at 65-66. In undertaking that task, the federal habeas court "should 'look through' [an] unexplained [state court] decision to the last related state-court decision that does provide relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson* v. *Sellers*, 138 S. Ct. 1188, 1192 (2018). It should defer to that reasoning, even if the habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Yeboah-Sefah*, 556 F.3d at 65.

Here, because the SJC denied appellate review, *Green*, 478 Mass. 1104, I look to the reasoning of the Appeals Court, *see Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888, when evaluating the merits of Mr. Green's claim. In doing so, I recognize that this intermediate appellate tribunal in turn relied upon the fully reasoned judgment of the Superior Court, which I also consult, in evaluating Mr. Green's claims in light of the transcript. *See supra* note 3.

### III. VIOLATION OF DUE PROCESS

Mr. Green argues that both the Appeals Court and the Superior Court improperly applied the standard set by state law with respect to his motion for a new trial on the basis of newly discovered evidence. In particular, he argues, the state courts

14

improperly held that testimony presented by Devarus Hampton at the trial of Anthony Russ was not newly discovered and, in any event, would not have affected the verdict. That decision, he says, deprived him of the right under Sixth and Fourteenth Amendments to present a full defense and therefore, entitles him to a new trial.[10]

As a preliminary matter, the Commonwealth argues that the Appeals Court's denial of a new trial on the basis of newly discovered evidence was a matter for state law and therefore, cannot be reviewed in a petition for habeas corpus. As a generalized proposition, the Commonwealth is correct, but here, that position is beside the point. In non-death-penalty cases, "[e]rrors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised." *Kater* v. *Maloney*, 459 F.3d 56, 61 (1st Cir. 2006) (citing *Estelle* v. *McGuire*, 502 U.S. 62, 67-68 (1991)). Consistent with this mandate, I do not evaluate the

---

[10] The Commonwealth does not contest that Mr. Green exhausted state remedies with respect to his federal constitutional claim. In his ALOFAR to the SJC, Mr. Green presented the question of newly discovered evidence in terms of both state and federal law and specifically cited the decisions of the Supreme Court of the United States in *Holmes* v. *South Carolina*, 547 U.S. 319 (2006) and *Crane* v. *Kentucky*, 476 U.S. 683 (1986). Though the Appeals Court did not specifically address the federal claim in its decision, *see generally Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888, Mr. Green did, in fact, present the federal claim to both the Superior Court in his motion for a new trial and the Appeals Court on review. Consequently, I presume that the Appeals Court considered and effectively rejected Mr. Green's federal claim.

merits of Mr. Green's underlying claim that the testimony of

Devarus Hampton constituted newly discovered evidence under

Massachusetts law.[11]   I consider the question only under the

federal constitution.

---

[11] Under Massachusetts law, evidence is newly discovered if it
was "unknown to the defendant or trial counsel and not
reasonably discoverable at the time of trial." *Commonwealth* v.
*Cowels*, 24 N.E.3d 1034, 1043 (Mass. 2015).  To prevail under
state law on a motion for a new trial on the basis of newly
discovered evidence, a criminal defendant must not only show
that the evidence was "unknown and unavailable at the time of
trial despite the diligence of the moving party" but also that
the evidence was material, meaning it was "relevant and
admissible but also in the sense that it is important evidence
of such nature as to be likely to affect the result." *Wojcicki*
v. *Caragher*, 849 N.E.2d 1258, 1268-70 (Mass. 2006); *see also*
*Commonwealth* v. *Grace*, 491 N.E.2d 246, 248 (Mass. 1986).
    The newly discovered evidence at issue here is the testimony
of Devarus Hampton.
    During Mr. Green's trial, Mr. Hampton initially declined to
answer questions about the shooting but was eventually granted
immunity.  He then testified that he understood that he was
shielded from prosecution by that grant of immunity, that he
never spoke to police about the incident, and that he and Mr.
Lampley never spoke about the shooting.
    During the trial of Anthony Russ, however, Mr. Hampton
testified that Mr. Lampley had told him that Mr. Lampley wanted
to shoot Rodney Ferguson and confessed that he had been involved
in the shooting.  Mr. Hampton also indicated that he did not
fully understand what immunity meant when he testified at Mr.
Green's trial.
    Mr. Hampton subsequently pled guilty to perjury on the basis
of his inconsistent statements regarding his knowledge of the
police investigation after the shooting and his conversations
with Mr. Lampley at the two trials.  To support that plea, the
Commonwealth only needed to show that the statements at the two
trials could not both have been true; it did not need to prove
which statement was false.
    The Appeals Court, in reviewing the denial of the motion for a
new trial, reviewed the judgment of the Superior Court for abuse
of discretion and held that Mr. Hampton's testimony at Mr.
Russ's trial did not amount to newly discovered evidence because
Mr. Green had the opportunity to cross-examine Mr. Hampton.
*Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *2.  "That

I thus will evaluate only the merits of Mr. Green's *federal* claim — that the Massachusetts rule governing newly discovered evidence and its application here deprived Mr. Green of due process under the federal constitution.

The Supreme Court has consistently afforded state and federal lawmakers "broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes* v. *South Carolina*, 547 U.S. 319, 325 (2006). "This latitude, however, has limits." *Id.* While a state, consistent with its sovereign authority, may regulate the processes of its courts as it sees fit, it may not establish rules that deprive criminal defendants of the protections afforded by the federal constitution. *Id.* ("This Court's cases contain several illustrations of 'arbitrary' rules, *i.e.*, rules that exclude important defense evidence but that did not serve any legitimate interest.").

The right of defendants to have "a meaningful opportunity to present a complete defense" may not be abridged arbitrarily. *Crane* v. *Kentucky*, 476 U.S. 683, 690 (1986) (internal quotations and citations omitted). The cornerstone of this right is the

---

Hampton later testified to a different version of events does not transform the later testimony into newly discovered evidence." *Id.* Even if it could be said it did, however, the Appeals Court agreed with the Superior Court that Mr. Green had not shown that the new evidence would have materially affected the outcome of the trial given Mr. Hampton's questionable credibility, which would have rendered any new testimony "relatively worthless." *Id.* at *2-3.

opportunity to be heard and "to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing." *Id*. at 690-91 (internal citations omitted). Part and parcel of this opportunity is the right of a criminal defendant to "offer testimony of witnesses and to compel their attendance if necessary" to assure the defendant's right to present his version of the facts "to the jury so that it may decide where the truth lies." *Washington* v. *Texas*, 388 U.S. 14, 19 (1967).

In a case such as this, where a habeas petitioner argues that the state court's application of its own procedural rules violated his federal right to due process, I must consider whether either the rules governing a motion for a new trial or the Appeals Court's application of those rules "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental or transgresses any recognized principle of fundamental fairness in operation." *District Attorney's Office* v. *Osborne*, 557 U.S. 52, 69 (2009); *see also Cooper* v. *Bergeron*, 778 F.3d 294, 305-06 (1st Cir. 2015) (holding that, when a habeas petitioner challenges a state evidentiary ruling, he must establish "some extreme malfunction in the state court's decision[ ] to warrant § 2254 relief." (internal quotations omitted)); *O'Brien* v. *Marshall*, 453 F.3d 13, 19-20 (1st Cir. 2006) ("[F]ederal rights are violated only when state rules or particular results are shocking or indefensible.").

I cannot say here that the state court decision to deny Mr. Green a new trial on the basis of Mr. Hampton's testimony was so "shocking or indefensible" as to entitle him to habeas relief. *O'Brien*, 453 F.3d at 19-20.  Mr. Green does not challenge the facial validity of the Massachusetts rule governing newly discovered evidence; nor, I note, would such a claim succeed, especially because the Massachusetts rule essentially mirrors the federal one. [12]  *Compare United States* v. *Wright*, 625 F.2d

---

[12] Under Massachusetts law, a criminal defendant is entitled to a new trial on the basis of newly-discovered evidence if that evidence was both "unknown and unavailable at the time of trial despite the diligence of the moving party" and was "material, not only in the sense that it is relevant and admissible but also in the sense that it is important evidence of such a nature as to be likely to affect the result." *Wojcicki*, 849 N.E.2d at 1268-70 (internal citations and quotations omitted).  "Although the judge need not be convinced that the new evidence would result in a different verdict, it must nevertheless be important evidence that would have a genuine effect on the jury." *Id*. at 1270.

The federal standard is almost identical, and requires a defendant seeking a new trial on the basis of newly discovered evidence under Fed. R. Crim. P. 33 to demonstrate that: "(1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to a lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant." *United States* v. *Wright*, 625 F.2d 1017, 1019 (1st Cir. 1980).  "New evidence is material if it has the potential to alter the outcome of the lawsuit under the applicable legal tenants." *United States* v. *Hernandez-Rodriguez*, 443 F.3d 138, 145 (1st Cir. 2006).  The question of materiality under federal law thus dovetails with the question whether newly discovered evidence will "probably result in an acquittal upon retrial of the defendant." *Wright*, 625 F.2d at 1019.

I note that the standard for materiality under Rule 33 is different from the standard for materiality with respect to violations of the rule established by *Brady* v. *Maryland*, 373 U.S. 83 (1963).  In the context of a *Brady* violation, the

1017, 1019 (1st Cir. 1980) (citing FED. R. CRIM. P. 33), *with*

*Wojcicki* v. *Caragher*, 849 N.E.2d 1258, 1268-70 (Mass. 2006).

Instead, Mr. Green argues that the Appeals Court's application

was unreasonable given the evidence of the inconsistencies

between Mr. Hampton's testimony at the trial of Mr. Green and at

the trial of Mr. Russ. After a close review of the record, I

cannot agree.

As the Appeals Court notes in its memorandum, Mr. Green had

the opportunity to "thoroughly cross-examine[ ]" Mr. Hampton

during his trial, and to have his counsel elicit testimony

regarding Mr. Hampton's relationship with Mr. Lampley. During

the course of trial, the Commonwealth made Mr. Hampton available

by granting him broad immunity and the trial judge inquired of

Mr. Hampton to ensure he understood the nature of that immunity

before allowing cross-examination to proceed. Given Mr.

Hampton's uneasy relationship with the truth, as evidenced by

his later conviction for perjury, it is not clear to me that Mr.

Green would have been able to elicit the kind of testimony he

sought from Mr. Hampton, either during his original trial or in

a subsequent proceeding. Nor is it clear that Mr. Hampton's

---

Supreme Court has held that the standard governing materiality
depends on the type of nondisclosure alleged, and the standard
is lower in circumstances where the prosecutor either
deliberately adduces perjured testimony or fails to provide
specific evidence requested by defense counsel. *See United
States* v. *Agurs*, 427 U.S. 97, 106-07 (1976). Mr. Green has not
raised a *Brady* claim here.

testimony would have been anything more than cumulative, especially because Mr. Lampley testified during Mr. Green's trial that he was aware of the police investigation and of the fact that a canine unit tracked suspects in the shooting to his residence.

I certainly cannot say that the judgment to this effect by the Superior Court judge, who actually observed Mr. Hampton on the stand, was manifestly unreasonable such that it should now be rejected by a federal court on habeas review.

Moreover, if I accept Mr. Green's contention that the testimony of Mr. Hampton in the *Russ* trial should have been treated as newly discovered evidence, I still cannot accept his argument that the Appeals Court's determination regarding prejudice was arbitrary or unreasonable. Mr. Green is correct that the Appeals Court evaluated the question of prejudice by considering whether "a jury exposed to [the newly discovered] evidence would have reached a different conclusion." *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *2. He is also correct this formulation is linguistically distinct from one articulated by the SJC, which asks whether the evidence "would also be a real factor with the jury in reaching a decision." *Wojcicki*, 849 N.E.2d at 1268. However, this strikes me as a distinction without meaningful difference, especially because the SJC has consistently indicated that newly discovered evidence must be "material" in order to entitle a defendant to a new trial. *See*

*id*. at 1270; *see also supra* n. 12.  I cannot say, then, that the Appeals Court's decision was so unreasonable that it deprived Mr. Green of a meaningful opportunity to present a defense. Indeed, the "would-have-reached-a-different-conclusion" standard applied by state law is essentially identical to the federal standard.[13]  *See e.g.*, *Wright*, 625 F.2d at 1020; *United States* v. *Connolly*, 504 F.3d 206, 212-13 (1st Cir. 2007) (distinguishing between the standard applied to motions for new trial on the basis of a *Brady* violation and the standard on the basis of newly discovered evidence and holding that a motion for a new trial on the grounds of newly discovered evidence requires "an *actual* probability that the result would have been different" had the newly-discovered evidence been presented to a jury).

Consequently, I will not grant habeas relief on the basis of Mr. Green's due process claim.

---

[13] Though the Appeals Court did not explicitly mention this, it bears noting that its determination is bolstered when, as here, the Commonwealth has proceeded on a joint venture theory with respect to a murder charge.  Even if Mr. Hampton had provided evidence that Mr. Lampley wanted to kill Rodney Ferguson and had actually shot into the house at 36 General Patton Drive, such evidence would not exonerate Mr. Green or otherwise undermine the reliability of the jury verdict.  Mr. Green also never raised a *Brady* claim, so there is no suggestion that the Commonwealth had control over the inconsistencies in Mr. Hampton's testimony or of any other evidence that could have swayed the jury in Mr. Green's trial.  From all that appears, the Commonwealth did not learn of evidence regarding Mr. Hampton's inconsistencies until he testified at the subsequent *Russ* trial.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Green also seeks habeas relief on the separate basis that his trial counsel was constitutionally ineffective. In particular, Mr. Green points to five specific decisions taken by his trial counsel that he contends rendered trial counsel ineffective:

(A) Trial counsel failed to object contemporaneously to the Commonwealth's claims during its closing argument that Mr. Green made several phone calls, though the calls did not appear in any phone records;

(B) Trial counsel failed to challenge the Commonwealth's claim that Mr. Green used a particular phone despite a lack of record evidence;

(C) Trial counsel failed effectively to challenge the Commonwealth's claim, through its expert, that DNA evidence taken from the crime scene did not exclude Mr. Green;

(D) Trial counsel failed to introduce evidence that Mr. Lampley had lied about his alibi to police; and,

(E) Trial counsel did not seek to suppress or otherwise object to the introduction of letters written by Mr. Green to his then-girlfriend Ms. Schwenk and suggests that trial counsel was ineffective for doing so.

At the threshold of addressing the merits of the ineffective assistance of counsel claim, the Commonwealth also argues that Mr. Green did not properly exhaust his claims

because they were not fully presented to the SJC in his ALOFAR either separately or together. I will address the question of exhaustion more fully before turning to the merits of the specific ineffectiveness claim.

Under 28 U.S.C. § 2254, a state prisoner is obligated "to exhaust the remedies available in the courts of the State" before seeking habeas review from the federal courts. 28 U.S.C. § 2254(b)(2); *see also Rose* v. *Lundy*, 455 U.S. 507 (1982). "The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Lundy*, 455 U.S. at 518. The doctrine derives from the principle of comity and reflects recognition that, consistent with our system of federalism, the state courts "are to be given the opportunity to correct alleged violations of prisoners' federal rights" before the federal courts intervene. *Duncan* v. *Henry*, 513 U.S. 364, 365 (1995) (per curiam). Consequently, in order for me to reach the merits of Mr. Green's ineffectiveness claims, they must first have been "fairly presented" to the state courts. *Picard* v. *Connor*, 404 U.S. 270, 275 (1971); *see also Gagne* v. *Fair*, 835 F.2d 6, 7 (1st Cir. 1987).

Under the exhaustion requirement, "the legal theory [presented] in the state and federal courts must be the same," even if not expressed in precisely the same terms. *Gagne*, 835 F.3d at 7. The key metric is whether "the constitutional

24

analysis necessary to resolve the ultimate question posed in the habeas petition and in the state court proceedings, respectively, [is] substantially the same." *Scrapa* v. *Dubois*, 28 F.3d 1, 6 (1st Cir. 1994). To this end, the First Circuit has highlighted four methods through which a petitioner may satisfy the exhaustion requirement: he may

> (1) cit[e] a specific provision of the Constitution;
> (2) present[ ] the substance of a federal constitutional
> claim in such a manner that it likely alerted the state
> court to the claim's federal nature; (3) [rely] on
> federal constitutional precedents; and, (4) claim[ ] a
> particular right specifically guaranteed by the
> Constitution.

*Gagne*, 835 F.3d at 7.

A petitioner may also satisfy the exhaustion requirement — even if he cites purely to state law — if "the state system applied the federal Constitution" or if the state law is otherwise practically indistinguishable from federal law. *Nadworny* v. *Fair*, 872 F.2d 1093, 1102-03 (1st Cir. 1989); *see also Scrapa*, 38 F.3d at 8.

Regardless of the method used, the First Circuit has explained, a Petitioner's claim is only exhausted if "it is more likely than not that a reasonable jurist would recognize the constitutional dimension of the petitioner's claim, given the manner in which those claims were presented." *Barresi* v. *Maloney*, 296 F.3d 48, 51-52 (1st Cir. 2002). Under this standard, in order to address a federal habeas corpus petition arising from Massachusetts state courts, the "appealed issue

cannot be considered as having been fairly presented to the SJC for exhaustion purposes unless the applicant has raised it within the four corners of the ALOFAR." *Mele* v. *Fitchburg Dist. Ct.*, 850 F.2d 817, 823 (1st Cir. 1988). Thus, I look only to the ALOFAR to determine whether Mr. Green has in substance fairly presented his ineffective assistance of counsel claim to the state courts for resolution.

I find that he has. Mr. Green, in his section concerning ineffective assistance in the ALOFAR, specifically pointed to trial counsel's failure to address the prosecutor's statements during closing arguments and to expert testimony regarding DNA analysis. He contended, albeit briefly, that his trial counsel's failure to present Lampley's admission that he had lied about his alibi falls within the definitions of ineffectiveness under the Sixth and Fourteenth Amendments to the federal constitution and Article 12 of the state Declarations of Rights. He also at least referenced trial counsel's failure to seek the suppression of the letters written to Ms. Schwenk as a basis for his ineffective assistance claim, though his actual discussion of the letters seems to focus more closely on the question of suppression itself, a question which the Appeals Court expressly considered on the merits.[14] Consequently, I find

---

[14] I recognize that of the five bases for ineffective assistance, this is the one that has least clearly been presented to the SJC. The ALOFAR includes reference to the letters in the section dealing with the ineffective assistance claim, but the

Mr. Green had at least raised the bases for his ineffective assistance claim in his ALOFAR.

Though Mr. Green's focus in both sections of his ALOFAR is on Massachusetts state law governing ineffective assistance of counsel, he cited, albeit obliquely and in passing, to the federal standard governing this area. The First Circuit has also acknowledged that Massachusetts law explicitly incorporates federal law with respect to ineffective assistance of counsel claims. *Scrapa*, 38 F.3d at 8; *see also Sleeper* v. *Spencer*, 510 F.3d 32, 39-40 n. 2 (1st Cir. 2007).

Consequently, I conclude that Mr. Green fairly presented his federal claim for ineffective assistance of counsel to the state courts and therefore, that I may consider this claim on the merits.

The Supreme Court has long recognized "that the Sixth Amendment right to counsel exists, and is needed in order to protect the fundamental right to a fair trial." *Strickland* v. *Washington*, 468 U.S. 668, 685 (1984). "The right to counsel," it has explained, "plays a crucial role in the adversarial

---

paragraph discussing the letters focuses on why they should have been suppressed, is not particularly coherent, and does not cite case law. However, because the Appeals Court dealt with the suppression issue under the Fourth Amendment, as incorporated into Massachusetts state law, and because the letters were referenced in the ALOFAR in Mr. Green's discussion of the reasons he questioned trial counsel's effectiveness, I am prepared to accept the proposition that there is enough here to say that the question was at least presented to the SJC.

system . . . since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled." *Id*. Consequently, criminal defendants are entitled not only to *a* lawyer, but an effective one.

Under *Strickland* v. *Washington*, 468 U.S. 668 (1984), a prisoner seeking to show that trial counsel was ineffective must demonstrate "deficient performance by counsel resulting in prejudice." *Rompilla* v. *Beard*, 545 U.S. 374, 380 (2005). To satisfy the first prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 468 U.S. at 687. "The question is whether the attorney's representation amounted to incompetence under the prevailing professional norms, not whether it deviated form the best practices or most common customs." *Harrington* v. *Richter*, 562 U.S. 86, 105 (2011); *see also Rompilla*, 545 U.S. at 380. In most circumstances, then, courts will be highly deferential to the strategic decisions made by trial counsel because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105.

It bears emphasizing that even if counsel is deemed to be ineffective, a petitioner is not entitled to relief unless he

can also show prejudice, which requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial," thereby rendering the result unreliable. *Strickland*, 468 U.S. at 687.  In the absence of a clear conflict of interest between the defendant and trial counsel, the defendant is obligated to "affirmatively prove prejudice."  *Id*. at 693.

Here, Mr. Green points to five tactical decisions made by trial counsel that, he argues, rendered trial counsel constitutionally ineffective.

Though I have already determined that all five bases have been exhausted, the Appeals Court only considered explicitly that with respect to Mr. Lampley's alibi in the context of an ineffective assistance claim.  *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *3.  It addressed others under the state's criminal procedure rules.  *Id*. at *5-6.  However, because all the errors alleged in this petition were presented to the Appeals Court as substantive bases from which to find trial counsel ineffective, I must presume that the Appeals Court considered, and rejected, the various merits arguments, especially where I find no basis to assume the contrary. *Johnson* v. *Williams*, 133 S. Ct. at 1094.

Consequently, in reaching the merits of the federal claims, I defer to the Appeals Court's implicit judgment unless it is

"contrary to, or involved an unreasonable application of federal law."  28 U.S.C. § 2254(d)(1).

### (A)&(B) Arguments Regarding Phone Calls

Mr. Green argues that trial counsel was constitutionally ineffective because he failed, during the Commonwealth's closing arguments, to object to statements that Mr. Green made several phone calls on the day of the shooting despite the fact that the statements were unsupported by evidence on the record.  He similarly argues that trial counsel failed to challenge the Commonwealth's claim that Mr. Green used a particular phone. Because of their similarity, I address these two claims together.

Mr. Green argued both in this court and before the Appeals Court that the Commonwealth's case against him was entirely circumstantial and that the prosecutor tried to make his case appear stronger by materially misleading the jury during closing argument.  *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *5-6.  In particular, he points to statements by the Commonwealth during closing arguments that suggested to the jury Mr. Green made several phone calls to Jill Parsons and Jessica Schwenk on the day of the shooting and that he used a phone number registered to Mary Nunn Evans.  *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *5.  His counsel, Mr. Green argues, was constitutionally ineffective because he failed to object to

these statements or otherwise challenge them in his own closing statements.

As a preliminary matter, I note that the Appeals Court specifically found that the statements by the Commonwealth were not improper under Massachusetts law. *Id*. at *6 ("In closing arguments, a prosecutor may analyze the evidence and suggest reasonable inferences the jury should draw from that evidence."). The Commonwealth elicited live testimony from both Ms. Parsons and Ms. Schwenk during trial to support its position that Mr. Green made and received several phone calls the day of the shooting. *Id*. It also found that the Commonwealth's suggestion that Mr. Green used the phone registered to "Mary Nunn Evans" was reasonable given the evidence of record.[15]  *Id*. Consequently, even if trial counsel's failure to object to these statements and to introduce telephone records raised the specter of incompetence, I cannot say that Mr. Green was prejudiced. The determination of whether to believe the testimony elicited from Ms. Parsons and Ms. Schwenk regarding phones calls is a question left for the jury, and trial counsel's tactical decisions during closing arguments, even if unreasonable, did not constitute a "breakdown in the adversary process that

---

[15] The phone records for a phone number registered to "Mary Nunn Evans," along with phone records for a phone that Ms. Schwenk testified belonged to her were introduced into evidence at trial.  Both Ms. Schwenk and Ms. Parsons also testified about these phone calls on the stand.

renders [the jury's verdict] unreliable." *Strickland*, 468 U.S. at 687.

Mr. Green has provided no indication that trial counsel's failure to object during the Commonwealth's closing arguments constituted anything more than a reasonable, tactical decision based on his professional judgment.[16] There is no indication in the record, and certainly Mr. Green does not point me to anything, to suggest that trial counsel did not discover the records or should have objected to their introduction into evidence. *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *5-6. At most, then, Mr. Green's objection to trial counsel's conduct can be characterized as a general concern that trial counsel did not speak up and more aggressively argue to the jury that Mr. Green was not responsible for the phone calls and did not have access to the phone number registered to "Mary Nunn Evans." In the absence of anything more, I cannot say that trial counsel acted in error. I certainly cannot say that trial counsel's conduct was so egregious as to constitute ineffective assistance. Moreover, a review of the transcript satisfies me that trial counsel was quite zealous in his various arguments in support of the defendant's litigation position.

---

[16] My reading is that the statements were proper given the testimony in evidence and did not point to anything that had been excluded from the jury's consideration or otherwise suggest an improper inference.

*(C)*  *The DNA Evidence*

Mr. Green also argues that trial counsel failed to object to a statement made by the Commonwealth's expert that Mr. Green could not "be included or excluded from a DNA result" taken from a sample found on a glove recovered at the scene of the crime.[17]

The Appeals Court was clear that, under Massachusetts law, the admission of evidence of DNA from one glove in this case was, as a general proposition, improper because it was irrelevant. *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *6. I do not, however, find that the Appeals Court's further determination that Mr. Green was not prejudiced by the admission of inconclusive DNA evidence was unreasonable or contrary to federal law. Indeed, the Appeals Court specifically held that there would have been "no substantial risk of a miscarriage of

---

[17] During trial, the Commonwealth called Kristin Zaramba, a chemist at the Massachusetts State Police Crime Lab, who testified that she compared DNA samples taken from a glove and a black hoodie recovered from the scene of the incident with known samples from Mr. Green, Mr. Lampley, and Mr. Hampton. Ms. Zaramba testified that the results from the glove yielded inconclusive results but that the results from the black hoodie excluded the three men. During Closing Arguments, the Prosecutor referenced Ms. Zaramba's testimony, stating that the DNA test on the glove was inconclusive, but pointed to one of the letters written by Mr. Green and offered into evidence which mentioned the glove. The Prosecutor suggested Mr. Green knew about the glove because it belonged to him and suggested that Mr. Green's statements in the letters were also "completely consistent with the test that's inconclusive for it to be Mr. Green's [DNA] on the glove[.]" Following closing arguments, Mr. Green's trial counsel objected to these statements as assuming facts not in evidence, but the objection was overruled. There does not appear to have been any contemporaneous objection to Ms. Zaramba's testimony.

justice," even if the DNA evidence was improperly admitted. *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *6. Consequently, even if trial counsel was constitutionally ineffective for failing to seek to exclude expert testimony that the DNA evidence was inconclusive, this error was, as the Appeals Court determined, harmless. Mr. Green does not make the necessary showing of prejudice to succeed on this basis.

This lack of prejudice would not necessarily mean that trial counsel's failure to undertake exclusion of the evidence rendered him constitutionally ineffective. Indeed, trial counsel did object to the Commonwealth's statements during closing arguments that speculated as to the source of the DNA found on the glove. The fact that the objection was unsuccessful does not render trial counsel ineffective. Nor does his failure to seek the complete exclusion of expert testimony on the subject, especially when some of that testimony was exculpatory. Consequently, I cannot say that trial counsel's conduct was objectively unreasonable "under prevailing professional norms." *Rompilla*, 545 U.S. at 380.

## (D) *Mr. Lampley's Alibi*[18]

Mr. Green argues that his trial counsel was constitutionally ineffective because he failed to adduce

---

[18] Unlike its treatment of the other decisions challenged in the petition before me, the Appeals Court dealt squarely with the question whether trial counsel was ineffective for failing to introduce this testimony.

evidence that Mr. Lampley lied to police about his alibi for the day of the shooting.[19]  In particular, Mr. Green argues that his trial counsel should have tried to introduce evidence either in the form of testimony or in the form of the polygraph report that Mr. Lampley lied about his whereabouts.

However, as with his other arguments relating to ineffective assistance of counsel, Mr. Green's argument here ultimately fails.  As the Appeals Court pointed out, trial counsel did, in fact, call Mr. Lampley to testify and questioned him repeatedly about his statement to police that he lied about his alibi.  Trial counsel also sought to refresh Mr. Lampley's recollection with the polygraph report to elicit the kind of testimony Mr. Green believed should have been provided to the jury, though the trial judge did not allow the admission of the report itself.  Trial counsel represented in open court that he intended to call the officer who conducted Mr. Lampley's polygraph exam to testify about his impression of Mr. Lampley during the polygraph exam.  But, after speaking to the officer, trial counsel believing that the officer had no recollection of

_____

[19] When he was initially interviewed by police, Mr. Lampley told police officers that he had gone for a walk in the neighborhood with his girlfriend the night of the shooting.  He subsequently took a polygraph test during which he was asked again about his whereabouts on the night of the shooting.  A later police report stated that "the examinee admitted to lying about his alibi." *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *3.  The report produced as a result of the polygraph exam also indicated that the examinee "was attempting deception" when he gave certain answers.

the event and "was not ready to offer anything" by way of meaningful testimony; he ultimately chose not to call the officer. *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *3.

The Appeals Court found, and I agree, that it is not clear what else a reasonable lawyer in these circumstances may be required to do. However, even if Mr. Green could carry his burden and show that trial counsel was constitutionally ineffective for failing to call the officer to testify or otherwise to push for the admission of polygraph report evidence that Mr. Lampley lied about his alibi, he still cannot demonstrate prejudice. Under Massachusetts law, the polygraph report was inadmissible as hearsay, and indeed, the trial judge stated clearly that he would not allow the parties to adduce evidence of a polygraph report under this rule. The report also would not have fallen into the exception for past recollections recorded because "[t]he defendant has not shown that he can satisfy the third requirement – that is, that [the officer] could testify that the statement, 'examinee admitted to lying about his alibi, was true [when made].'" *Id*. (referencing *Commonwealth* v. *Nolan*, 694 N.E.2d 350, 352 (Mass. 1998)).

Furthermore, even if the testimony could be admitted, the Appeals Court held, and I do not disagree, that it would have

been, at most, cumulative because trial counsel had already impeached Mr. Lampley through cross-examination.[20] *Id.* at *4.

Based on my reading of the record, I cannot say that the Appeals Court's judgment was patently unreasonable and that trial counsel was constitutionally ineffective for failing to introduce statements by Mr. Lampley that he had lied about his alibi.

## *(E)* *The Letters*

For the sake of completeness, I also briefly address Mr. Green's argument that trial counsel should have sought to exclude letters sent by Mr. Green to Ms. Scwhenk during the period of his incarceration. Though this claim has not been squarely presented to me, it is mentioned at various points in Mr. Green's petition for habeas relief, and was presented to both the Appeals Court and the SJC.

As the decision of the Appeals Court indicates, trial counsel contemporaneously objected to the Commonwealth's reference to the letters during its closing argument but only

---

[20] I note that I do not find evidence that Mr. Lampley lied about his alibi to be material in this context. Several witnesses, including Mr. Lampley himself, testified about his ongoing feud with Rodney Ferguson, one of the other residents in the house at the time of the shooting. Moreover, there was testimony that Mr. Lampley was near the scene of the shooting immediately after it took place. There is also some suggestion, though it was not put before the jury, that Mr. Lampley was not being entirely honest on the stand about his recollection of his interaction with police and the statements he made to law enforcement regarding his alibi.

sought on appeal to connect these letters to his interrogation. *See Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *5; *cf. supra* note 4.

Though trial counsel did not seek to suppress the letters, *see supra* note 5, I cannot say that his failure to do so rendered him constitutionally ineffective, especially in light of significant discussions between counsel, the prosecutor and the trial court concerning which letters (and what portion of their contents) would be shown to the jury and admitted into evidence. Mr. Green has provided no evidence, or even argument, that a reasonable lawyer would have filed a motion to suppress the letters under these circumstances or would have done more to exclude the letters and their contents from the jury's consideration. Even if a reasonable lawyer would have done so, such a motion ultimately would have been unsuccessful because Mr. Green lacked standing to object to the seizure of the letters, *Green*, 92 Mass. App. Ct. 1102, 2017 WL 3317888 at *4, and because the letters did not constitute the fruits of an improper police interrogation. There was no cognizable prejudice from their admission.

## (F) Trial Counsel's Conduct in the Aggregate

Finally, even if the decisions made by trial counsel were not individually egregious, I recognize they might, in the aggregate, support the conclusion that trial counsel was constitutionally ineffective. *See United States* v. *Sepulveda*,

15 F.3d 1161, 1195-96 (1st Cir. 1993) ("Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect." (citing, *inter alia*, *Dunn* v. *Perrin*, 570 F.2d 21, 25 (1st Cir. 1978))); *see also Harrington*, 562 U.S. at 111.  In such circumstances, claims of cumulative error are general in nature, and "[a] reviewing tribunal must consider each such claim against the background of the case as a whole, paying particular weight to factors such as the nature and number of errors committed; their interrelationship . . . ; and the strength of the government's case." *Sepulveda*, 15 F.3d at 1196.

Apart from the fact that the ineffective assistance claim is not presented to me in this form, I find that the doctrine does not support Mr. Green's claims for ineffective assistance of counsel.  The majority of the so-called errors Mr. Green points to were strategic decisions by trial counsel to forego certain objections based on the state of the law at the time of trial.  While they may have been accompanied by a result that was adverse to Mr. Green, I cannot say, based on the record before me, that trial counsel's strategic judgment or his degree of aggressiveness in presenting the defendant's litigation position was unreasonable given the circumstances.

Moreover, even if the decisions taken together could have "amounted to incompetence under prevailing professional norms," *Harrington*, 562 U.S. at 1105, Mr. Green has not provided any

meaningful evidence of prejudice. *Strickland*, 468 U.S. at 693. At most, he suggests that the jury verdict would have been different because the jury acquitted his co-defendant Mr. Russ. However, this is not enough to show that Mr. Green was, in fact, prejudiced by the decisions made by trial counsel during his own trial; nor is it sufficient to render the Appeals Court's judgment denying his ineffective assistance claim unreasonable.

Consequently, I will deny Mr. Green's petition for habeas relief on the basis that his trial counsel was constitutionally ineffective.

## V. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED and the Clerk is directed to enter a judgment of dismissal.

*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE